# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL ACTION FILE** |
| | **:** | |
| **ARTIS LISBON,** | **:** | **NO. 1:10-CR-251-10-TWT/AJB** |
| | **:** | **(Third Superseding)** |
| **Defendant.** | **:** | |

## ORDER FOR SERVICE OF
## <u>REPORT AND RECOMMENDATION</u>

Attached is the Report and Recommendation ("R&R") of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and N.D. Ga. CrR. 58.1(A)(3)(a), (b). Let the same be filed and a copy of the R&R, together with a copy of this Order, shall be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections to the R&R within **fourteen (14)** days of service of this Order. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and be served upon the opposing party. *See United States v. Gaddy*, 894 F.2d 1307, 1315 (11th Cir. 1990). The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary

hearing for review by the District Court. Failure to object in accordance with this rule waives a party's right to review. FED. R. CRIM. P. 59(b)(2).

Pursuant to 18 U.S.C. § 3161(h)(1)(H), **the above-referenced fourteen (14) days allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act ("the Act"), whether or not objections are actually filed.** If objections to this R&R are filed, the Clerk is **DIRECTED** to **EXCLUDE** from the computation of time all time between the filing of the R&R and the submission of the R&R, along with any objections, responses and replies thereto, to the District Judge. 18 U.S.C. § 3161(h)(1)(D), (H); *Henderson v. United States*, 476 U.S. 321, 331 (1986); *United States v. Mers*, 701 F.2d 1321, 1337 (11th Cir. 1983). The Clerk is **DIRECTED** to submit the R&R with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this _26th_ day of _February_, 2012.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL ACTION FILE** |
| | **:** | |
| **ARTIS LISBON,** | **:** | **NO. 1:10-CR-251-10-TWT/AJB** |
| | **:** | **(Third Superseding)** |
| **Defendant.** | **:** | |

## UNITED STATES MAGISTRATE JUDGE'S
## <u>SECOND FINAL REPORT AND RECOMMENDATION</u>

Before the Court is Defendant Artis Lisbon's Motion *in Limine*, [Doc. 355], specifically as it relates to his request to his exclude from his trial any evidence of an out-of-court identification of him by co-defendant Jose Trinidad Ayala-Baez, a/k/a "Trino," and any in-court identification of Defendant by Ayala-Baez.[1] The government has filed a response, [Doc. 368], and Lisbon has replied. [Doc. 379]. For the following reasons, the undersigned **RECOMMENDS** that the motion be **DENIED** without an evidentiary hearing.

_____

[1] At the latest pretrial conference in this action, the undersigned **DEFERRED** to the District Court Lisbon's motion *in limine* as it relates to his request to exclude from his trial evidence of (1) his 1996 guilty plea, and (2) the seizure of money and assets. [Doc. 362].

*Facts*

As reflected in the parties' briefs and other materials on file, on June 9, 2010, DEA agents arrested Jose Trinidad Ayala-Baez, a/k/a "Trino" on federal drug charges. [Doc. 355 at 3]. When interviewed the following day, Ayala-Baez was asked about a subject named "Bebe," and he replied that Bebe was a black male customer to whom he was instructed to deliver cocaine by another subject of the investigation ("Burra"). Burra also instructed Ayala-Baez to pick up drug proceeds from Bebe on more than one occasion. [Doc. 355 at 3; *see also* Doc. 178-1 at 20-21, ¶ 23]. Ayala-Baez was shown a photographic lineup containing eight photographs of black males, and he identified Lisbon's photo (# 7) as the individual known to him as Bebe. [*Id.*; Doc. 355-1 at 2; Doc. 368-1 at 1]. The photograph of Lisbon used in the lineup was taken from his Georgia driver's license, which was issued on April 19, 2007. [Doc. 368 at 2 (citing Doc. 257 at 39-40 and Def. Ex. 2 at the April 13, 2011, evidentiary hearing); *see also* Doc. 368-2 at 1].

Ayala-Baez also told the interrogating agents that in the past ten months, he had personally delivered a total of approximately 50 kilograms of cocaine to Bebe. [Doc. 178-1, ¶ 23]. He also stated that he had picked up payment from Bebe on at least three occasions and sent another co-conspirator, Tin, on other occasions. [*Id.*].

2

Further, Ayala-Baez explained that in September 2009, he delivered a pick-up truck with a hidden compartment to Lisbon, which event was corroborated by intercepted calls and agent surveillance. [Doc. 178-1, ¶¶ 9, 23; Doc. 257 at 44-45]. Ayala-Baez identified a photograph of 1827 Lomita Road as the place he delivered the truck to Bebe, and he also identified 1899 Trotti Street as the location at which he picked up drug proceeds from Bebe within the past couple of weeks. [Doc. 178-1, ¶ 23]. He also stated that Bebe drove a late model brown Chevrolet Impala. [*Id.*].

### *Arguments of the Parties*

Lisbon argues that Ayala-Baez' out-of-court identification was impermissibly suggestive and unreliable, and that the identification and any proposed in-court identification by Ayala-Baez should be excluded from trial so as to not violate his due process rights. [Doc. 355 at 10]. He argues that, while all of the individuals depicted in the photographic spread were African-American males, only he had a full beard, and his photograph also appears to be displayed in sharper contrast than the surrounding photographs. [*Id.* at 10-11]. He also contends that since DEA Task Force Agent Noe's affidavit sets forth that Ayala-Baez only saw Lisbon on several occasions and on other occasions, another co-conspirator dealt with Lisbon, Ayala-Baez's interaction with

3

Lisbon was limited, and thus his subsequent identification of Lisbon cannot be deemed reliable. [*Id.* at 11].

In response, the government argues that case law holds that a photographic spread is not unduly suggestive merely because a defendant's photograph can be distinguished from the others in the lineup. [Doc. 368 at 3 (citations omitted)]. It further contends that although Lisbon might have had more facial hair than the other persons depicted in the photo spread, almost all of the others in the spread had some facial hair. [*Id.* at 5]. The government also submits that the fact that Lisbon had facial hair actually made him less likely to be identified, since in another photograph - - Lisbon's identification from Auction Access, which the government seized during Lisbon's arrest, [Doc. 368-2] - - he did not have a beard. [Doc. 368 at 5]. In any event, the government argues, any difference in the photographs due to Lisbon's facial hair is so minor that it did not render the spread unduly suggestive. [*Id.* at 6].

The government next argues that Lisbon's photo is not more sharp than the others and points out that the person at position # 1 in the spread also is depicted in a sharp photograph. [*Id.*]. The government further argues that even if Lisbon's photograph is more sharp than the others, this minor difference does not render the spread impermissibly suggestive. [*Id.* at 6-7 (citations omitted)]. As a result, the

4

government contends that Lisbon has not made a sufficient showing to warrant an evidentiary hearing. [*Id.* at 7-8].

In reply, Lisbon adds that his photograph was darker in contrast and background than the others. [Doc. 379 at 1-2]. He takes issue with the government's argument that the differences between his photograph and that of the others displayed in the spread were minor. He notes that the cases have recognized the " 'high incidence of miscarriage of justice' " [*Id.* at 2 (quoting *United States v. Williams*, 592 F.2d 1277, 1281 (5th Cir. 1979)[2]]. Lisbon also relies upon the former Fifth Circuit's decision in *United States v. Gidley*, 527 F.2d 1345, 1350 (5th Cir. 1976), which recognized that differences in hair in a photographic lineup can be impermissibly suggestive. [Doc. 379 at 3-4]. Attempting to distinguish the government's cases, Lisbon further argues that his beard is a substantial difference from the other depictees, even if some of them had thin moustaches, which thus rendered the lineup impermissibly suggestive and thus created a substantial risk of misidentification. He contends that this difference alone mandates an evidentiary hearing. [*Id.* at 4-5].

---

[2]     In *Williams*, the photo identification was found to present an issue as to impermissible suggestiveness, where the defendant's image was the only one common in two separate arrays shown to the identification witnesses. 592 F.2d at 1281.

AO 72A
(Rev.8/8
2)

Lisbon also takes issue with the government's argument that Lisbon's photo being darker or more sharp than the others' photos also was merely a minor difference, particularly since he also was the only person shown with full facial hair. [*Id.* at 5-6].

### Discussion

Due process prohibits witnesses from testifying about out-of-court identifications when there is a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 198 (1972). "[T]hat the identification procedure used was suggestive, alone, does not violate due process." *Irwin v. McDonough*, 243 Fed. Appx. 486, 492 (11th Cir. June 19, 2007) (citing *Neil*, 409 U.S. at 198-99). Instead, "a claimed violation of due process of law in the conduct of a confrontation[, *i.e.*, an out of court identification,] depends on the totality of the circumstances surrounding it . . . ." *Stovall v. Denno*, 388 U.S. 293, 302 (1967), *overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314 (1987). Thus, the "central question" is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil*, 409 U.S. at 199; *see also Manson v. Brathwaite*, 432 U.S. 98, 113-14 (1977) (emphasizing that the totality of the circumstances were examined to determine whether identification testimony was

AO 72A
(Rev.8/8
2)

admissible). "[R]eliability is the linchpin in determining the admissibility of identification testimony . . . ." *Manson*, 432 U.S. at 114.

Courts in the Eleventh Circuit employ a two-part test in examining whether an out-of-court identification violates due process. First, courts determine whether the identification procedure was impermissibly suggestive. Second, if the procedure was impermissible suggestive, courts next examine whether the identification procedure created a substantial likelihood of misidentification. *United States v. Smith*, 459 F.3d 1276, 1294 (11th Cir. 2006) (citing *United States v. Russo*, 796 F.2d 1443, 1452 (11th Cir. 1986)); *see also Cikora v. Dugger*, 840 F.2d 893, 895 (11th Cir. 1988). The undersigned addresses each step of the analysis separately.

When evaluating the suggestiveness of a photo array, courts examine several factors including: (1) the size of the array; (2) the manner of its presentation by law enforcement officers; and (3) the details of the photographs. *See United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994); *United States v. Sanchez*, 24 F.3d 1259, 1262 (10th Cir. 1994); *United States v. Cary*, No. 1:07-cr-74, 2008 WL 80650, *20 (N.D. Ga. Jan. 4, 2008) (Duffey, J., adopting Vineyard, M.J.).

The undersigned concludes that the photo array was not unduly suggestive. First, the undersigned notes that arrays of eight photographs are not by themselves

AO 72A
(Rev.8/8
2)

suggestive. *United States v. Boston*, 508 F.2d 1171, 1177 (2d Cir. 1974) (eight photographs not impermissibly suggestive); *United States v. McNeill*, Criminal No. 06-373, 2007 WL 2234516, *4 (W.D. Pa. Aug. 2, 2007) (array of eight photographs is sufficient size); *United States v. Cox*, No. 3:00CR69 (AHN), 2001 WL 50551, *3 (D. Conn. Jan. 10, 2001) (array of eight photographs "not unduly small"); *United States v. Frank*, No. 97 CR. 269(DLC), 1998 WL 292320, *2 (S.D.N.Y. June 3, 1998) (eight photographs not suggestive, citing *Boston*, *id.*).[3] *Cf. United States v. James*, 415 F. Supp. 2d 132, 166 (E.D.N.Y. 2006) ("[C]ourts have generally held that a photo array containing six or more photographs is sufficiently large so as not to be unduly suggestive."). As a result, the eight-photograph array displayed to Ayala-Baez is not inherently problematic.

Second, Lisbon makes no claim in any of his filings that the manner in which the photos were displayed to Ayala-Baez was suggestive. In any event, the record belies the viability of such a claim. Ayala-Baez was first asked about "Bebe" and to explain who that person was. He then picked out Lisbon's photo from an eight-subject photo spread. Ayala-Baez also described how he knew Lisbon. That Ayala-Baez also used

---

[3] The Court notes that Lisbon does not contend that the eight-photo array was too small a sample.

8

one or more other individuals to deliver drugs or pick up proceeds from Lisbon in addition to himself does not render his recognition of Lisbon unreliable or based on a fleeting opportunity to view the suspect. Ayala-Baez described multiple encounters with Lisbon, and it is not unreasonable to conclude that the repetitive nature of their illegal transactions and the significant quantities of drugs dealt between Lisbon and Ayala-Baez would generate the need for mutual familiarity in order to attain a sufficient level of trust between them. The undersigned further notes that Lisbon makes no claim of the type of procedures even remotely close to those where the Eleventh Circuit or Former Fifth Circuit found unduly suggestive photograph procedures. *See Mardsen v. Moore*, 847 F.2d 1536, 1546 (11th Cir. 1988) (citing and summarizing cases and holding photographic identification procedures impermissibly suggestive where the defendant was the only male in the photographs shown to the witness).

Third, the undersigned concludes that the photographs themselves are not suggestive. The photographs are relatively similar. They all depict men who appear to be African-Americans of similar age and skin color. The photos all show the same pose, *i.e.*, they show the frontal view of the faces and part of the shoulders or shirt collars of six of the persons depicted (## 1, 3, 4, 6, and 8 plus Lisbon (# 7)), with each man looking straight ahead. The background in each photo is similar, and although the

9

background of Lisbon's photo is somewhat darker, it is close in shading to # 1. It also

is significant that the background of photo # 5 is much lighter than the rest. Also, at

least Defendant and ## 6 and 8 appear to be wearing one or more stud earrings. All of

the persons depicted have similar closely cropped haircuts.

Lisbon's most strenuously-made objection to the photo spread is to the

differences in facial hair, since he was the only subject with a beard. However, that

there are some differences in physical appearance does not render the array

impermissibly suggestive. *See United States v. Ullrich*, 580 F.2d 765, 773 (5th Cir.

1978) (citations omitted)[4]; *see also United States v. Traeger*, 289 F.3d 461, 474 (7th Cir.

2002) (noting that law enforcement is not required "to search for identical twins in age,

height, weight, or facial features"). For example, in *Cikora*, the court found no

impermissible suggestiveness in a lineup procedure in which the defendant's facial hair

was more sparse than most of the other participants. 840 F.2d at 897. Similarly, a

line up depicting the defendant as the only individual wearing glasses has likewise been

found to be appropriate. *United States v. Ricks*, 817 F.2d 692 (11th Cir. 1987). In

*Blanco v. Dugger*, 691 F. Supp. 308, 312 (S.D. Fla.1988), *aff'd sub nom. Blanco v.*

---

[4]       In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)
(en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the
former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Singletary*, 943 F.2d 1477 (11th Cir. 1991), the defendant's facial hair and dress differences were not found to be " 'unnecessarily suggestive and conducive to irreparable mistaken identification.' " (quoting *Foster v. California*, 394 U.S. 440, 442 (1969)); *cf. United States v. Burbridge*, 252 F.3d 775, 780 n. 5 (5th Cir. 2001) (that defendant was the only one in photographic lineup with black t-shirt not impermissibly suggestive); *Harker v. Maryland*, 800 F.2d 437, 444 (4th Cir.1986) (photo array not impermissibly suggestive where only one other individual wore clothing similar to defendant's clothing, as identification based more on facial features than clothing).

*United States v. Gidley*, 527 F.2d 1345 (5th Cir. 1976), upon which Lisbon relies, is clearly distinguishable. In *Gidley*, the defendant was only person depicted with Asian appearance and long black hair. Here, although Lisbon appears to be the only persons with beard hair, the beard is not overly noticeable, and other persons depicted in the spread had moustaches. The differences in this case pale in comparison to those found impermissibly suggestive in *Gidley*.

Based on the above discussion, the undersigned concludes that the photo array was not impermissibly suggestive. As a result, the Court concludes that an evidentiary hearing is not warranted. As the court in *United States v. Brown*, 441 F.3d 1330, 1350 (11th Cir. 2006), observed, the Constitution does not impose a *per se* rule requiring an

AO 72A
(Rev.8/8
2)

evidentiary hearing in every case (citing *Watkins v. Sowders*, 449 U.S. 341, 349 (1981), and *United States v. Smith*, 546 F.2d 1275, 1279-80 (5th Cir. 1977) (holding that "[a]n evidentiary hearing is not required where none of the critical facts are in dispute and the facts as alleged by the defendant if true would not justify the relief requested" (quotation marks omitted)). Here, there are no facts in dispute as to the differences of the photographs in the array. Nor, as noted, has Lisbon presented any facts suggesting that the techniques used by the police were "unduly suggestive." Under these circumstances, the Court is not required to hold an evidentiary hearing. *See United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) (no abuse of discretion in denying motion for an evidentiary hearing where underlying motion to suppress was "wholly lacking in sufficient factual allegations").

By making a finding that the photo display and procedures used were not impermissibly suggestive, the undersigned need not examine second part of the due process analysis. *See Cikora*, 840 F.2d at 895-96 ("If [a court] conclude[s] that the photo array was not impermissibly suggestive, [the court] need not proceed to" the second step.); *Williams v. Weldon*, 826 F.2d 1018, 1021 (11th Cir. 1987) (noting that if a photo array is not unduly suggestive, the due process inquiry ends). However, the

AO 72A
(Rev.8/8
2)

undersigned discusses this second step in case the District Court disagrees with the undersigned's conclusion about suggestiveness.

## 2.    *Misidentification*

If a photo array is unduly suggestive, a court must proceed to analyze the second step, namely "whether, under the totality of the circumstances, the identification was nonetheless reliable." *United States v. Barber*, 132 Fed. Appx. 233, 235 (11th Cir. May 9, 2005) (quoting *Cikora*, 840 F.2d at 895).    To make this reliability determination, courts examine the following factors: "(1) opportunity to view; (2) degree of attention; (3) accuracy of the description;[5] (4) level of certainty; and (5) length of time between the crime and the identification." *Id.* (citing *Neil*, 409 U.S. at 199).  "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson*, 432 U.S. at 114.

---

[5]    The undersigned does not address this factor in this case because this factor addresses "the accuracy of the witness's prior description of the defendant." *Howard v. Bouchard*, 405 F.3d 459, 473 (6th Cir. 2005).  Here, there is no indication that Ayala-Baez was asked to give a description of Defendant prior to viewing the array, beyond describing him as a black male.  As a result, the undersigned does not find that this factor is relevant for the totality analysis below. *See Haliym v. Mitchell*, 492 F.3d 680, 705 (6th Cir. 2007) ("The third factor in inapposite. Nothing in the record suggests that [the witness] provided a description of the suspect to the police prior to the line-up.").

AO 72A
(Rev.8/8
2)

The undersigned concludes that Ayala-Baez' identification was otherwise reliable based on the totality of the circumstances. First, the undersigned concludes that he had an opportunity to view Lisbon based on their multiple drug transactions together, the last opportunity being a couple of weeks before identifying Lisbon in the photo spread. The undersigned therefore rejects Lisbon's argument that Ayala-Baez did not have sufficient opportunity to view him. Also, the record shows that in addition to having dealt drugs or picked up money with him on multiple occasions, Ayala-Baez was familiar with the locations Lisbon used to deal drugs (the Lomita and Trotti properties, [Doc. 178-2, ¶ 23]), thus corroborating his familiarity with Lisbon. Given this evidence and the fact that the quantity of drugs Lisbon and Ayala-Baez were dealing with would require familiarity with each other in order to establish trust, the undersigned concludes that Ayala-Baez had the opportunity to pay, and in fact paid, close attention to Defendant.

Next, the undersigned concludes that the evidence indicates that Ayala-Baez was certain in identifying Defendant. He knew him by nickname, knew his residences, delivered a vehicle and cocaine to him and retrieved money from him. There is no indication that Ayala-Baez had difficulty identifying Defendant.

14

Finally, the undersigned finds that the time lapse of "the past couple of weeks" between the identification and Ayala-Baez's last contact with Lisbon was not too attenuated to render his identification unreliable. Initially, the undersigned notes that courts have determined that even a period of three months is not too long between an observation and identification. *See Howard v. Bouchard*, 405 F.3d 459, 473 (6th Cir. 2005); *United States v. Wiseman*, 172 F.3d 1196, 1211 (10th Cir. 1999) ("Three months is not an extremely long time however, and we conclude that this factor weighs in favor of the reliability of the identifications . . . ."). Also, courts have determined that a period of four months between a witnesses' observation and identification of a suspect is not too lengthy a period of time to render an identification unreliable. *Kubat v. Thieret*, 867 F.2d 351, 359 (7th Cir. 1989) (four month period from crime to identification "was not so inordinate as to outweigh the other factors"); *United States v. Wilson*, 787 F.2d 375, 386 (8th Cir. 1986) (period of four months between identification and crime did not render identification unreliable); *United States v. Ladoucer*, No. 07-cr-165, 2007 WL 3375223, *22 (D. Minn. Aug. 30, 2007) (R&R) (three to four month delay between encounter with defendant and identification was not unreasonable amount of time to remember faces of individuals with whom witness had contact). As a result, the undersigned concludes that the "past couple of weeks" in this

15

case between the identification and the witness's last encounter with Lisbon does not render the identification unreliable. This is especially true in this case because Ayala-Baez had interacted with Defendant on multiple occasions prior to his last encounter with him.

Based on the above discussion, each relevant factor outlined in *Biggers* weighs in favor of finding that Ayala-Baez's identification was reliable. The undersigned again reiterates that he developed a familiarity with Defendant based on his multiple encounters with him. Under the totality of the circumstances, the undersigned concludes that the identification was reliable even if the photo array was suggestive.

Accordingly, the undersigned **RECOMMENDS** that Defendant Artis Lisbon's Motion *in Limine*, [Doc. 355], specifically as it relates to an alleged out-of-court identification of him by co-defendant Ayala-Baez, and any in-court identification of Defendant by Ayala-Baez, be **DENIED WITHOUT AN EVIDENTIARY HEARING**. The balance of the motion *in limine* is **DEFERRED** to the District Court.

Having ruled upon all motions referred to the undersigned, the Court again **CERTIFIES** this action as it relates to Defendant Lisbon **READY FOR TRIAL**.

AO 72A (Rev.8/82)

**IT IS SO RECOMMENDED and CERTIFIED**, this the ___26th___ day of

February, 2012.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/8
2)